IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2016

**MICHAEL ALLEN GIBBS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Haywood County**
**No. 6458      Clayburn Peeples, Judge**

---

**No. W2015-01808-CCA-R3-PC  -  Filed June 30, 2016**

---

The petitioner, Michael Allen Gibbs, appeals the denial of his petition for post-conviction relief from his first degree felony murder, aggravated burglary, and attempted especially aggravated robbery convictions.  He asserts that the post-conviction court erred in denying his petition because he received ineffective assistance of counsel in that counsel did not thoroughly advise him regarding a plea offer and the proof needed to convict him. After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Joshua B. Dougan, Jackson, Tennessee, for the appellant, Michael Allen Gibbs.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Garry Brown, District Attorney General; and Mark C. Hazelwood and Jerald M. Campbell, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner was convicted of first degree felony murder, especially aggravated burglary, and attempted especially aggravated robbery.  State v. Michael Allen Gibbs, No. W2012-00800-CCA-R3-CD, 2013 WL 3324957, at *1 (Tenn. Crim. App. June 26, 2013), perm. app. denied (Tenn. Nov. 14, 2013).  He was sentenced to life imprisonment on the murder conviction and ten years on each of the other convictions, to be served concurrently with each other but consecutively to the life sentence. Id. at *2.  On direct

appeal, this court modified the especially aggravated burglary conviction to aggravated burglary and modified the attendant sentence to five years instead of ten. Id. at *4-5. This court affirmed the judgments in all other respects. Id. at *5. The Tennessee Supreme Court denied the petitioner's application for permission to appeal.

This court recited the underlying facts of the case on direct appeal as follows:

This case arises from the August 2009 shooting death of the victim, Daniel Bradford, inside his Brownsville home. Following the victim's death, a Haywood County grand jury charged the [petitioner], along with his co-defendant Michael Batchelor, with first degree premeditated murder, first degree felony murder, especially aggravated burglary, and attempted especially aggravated robbery. Tenn. Code Ann. §§ 39-12-101, -13-202, -13-403, -14-404. The [petitioner] and Batchelor were tried separately; the [petitioner]'s case proceeded to trial on September 26, 2011.

The evidence presented, in the light most favorable to the State, at trial showed that the [petitioner]; the co-defendant; the [petitioner]'s girlfriend, Victoria Miller; and her friend, Angela Sangster, had gathered during the evening hours at Miller's apartment on August 28, 2009. Miller and Sangster announced to the men that they were leaving to purchase alcohol. According to Miller, the men understood that this meant a trip to the victim's house, a relative of Miller's who illegally sold liquor out of his home.

They arrived at the victim's house, and the victim answered his door wearing checkered pajama pants. The victim invited the women inside to discuss their purchase. Once inside, two men entered with bandanas covering their faces, instructing the two women to "get down" and demanding money and liquor from the victim. As the women crouched beside the bed, one of the men said that the victim had a gun, and then a gunshot was fired. The men exited. The two women left abruptly thereafter and did not check on the victim. They returned to Miller's apartment and, finding no one there, went to purchase cigarettes from a nearby convenience store. They then went to check on the victim and found him dead from a gunshot wound. Miller telephoned the police.

An investigation ensued. Brownsville Police Department officers arrived at the victim's house around midnight and discovered the victim partially nude from the waist down. According to one paramedic, the victim's body was still warm to the touch. Officers also discovered a

2

loaded weapon underneath the victim, which had not been fired. It appeared that someone had rummaged through the victim's belongings; the house was in disarray and liquor bottles were strewn across the bed. According to Sergeant Michael Phillips, it appeared as though someone was looking for something.

In her initial statement to the officers immediately after the shooting, Miller denied being present during the shooting. Upon subsequent questioning, she admitted to being in the room when the shooting occurred. Although she could not identify either of the two men from their physical appearance, she claimed to recognize the [petitioner]'s voice. Angela Sangster was interviewed later; she was never able to identify either individual. Both women claimed that the victim was wearing pants when they last observed him.

The [petitioner], knowing the police considered him the prime suspect in the victim's murder, turned himself in. He was questioned and denied any involvement in the victim's murder. He claimed that he was at Miller's house at the time of the shooting and only became aware of it when Miller returned home later that evening. The [petitioner] thereafter remained incarcerated.

Jerry Wayne Shaw testified that he was incarcerated with the [petitioner] while he was awaiting trial. According to Shaw, the [petitioner] told him that he, the co-defendant, and Miller went to the victim's house to rob him. The plan was to use the women to get inside. The [petitioner] relayed to Shaw that he and his co-defendant waited on the side of the house, and then when the victim opened the door, they ran in. The [petitioner] said to Shaw that when the victim reached "for his pants," he shot him. Shaw was told that the victim was not wearing any pants when he opened the door.

Kristopher White was also incarcerated with the [petitioner]. White said that the [petitioner] admitted to shooting the victim during a robbery. According to White, the [petitioner] did not believe he would be convicted of the victim's murder due to a lack of evidence. The [petitioner] told White that Miller and Sangster were suppose[d] to "handle it" but were unable to go through "with getting the money," so he was "called in on the cue" and shot the victim.

3

Also while incarcerated, the [petitioner] wrote letters to Miller. In one letter, he asked for Miller's help at the preliminary hearing, noting that Miller and Sangster were the only witnesses against him.

Id. at *1-2.

On November 14, 2014, the petitioner filed a *pro se* petition for post-conviction relief and, following the appointment of counsel, an amended petition was filed. In his petitions, the petitioner raised, among other things, allegations of ineffective assistance of counsel, including the sole allegation pursued on appeal: that counsel was ineffective for failing to advise him about the proof needed to establish the felony murder charge, causing him to reject a favorable plea offer. We will, thus, summarize only those portions of the evidentiary hearing that are pertinent to that issue.

The petitioner testified that he met with counsel approximately five times before trial. He claimed that he did not realize that he was charged with felony murder until "the end of trial." He explained:

My understanding a felony murder . . . is when somebody dies during the commission or perpetration of a crime and so that's what I got charged with, but I – at the beginning of the trial I didn't know the difference. My lawyer failed to explain[] to me what like I'm really actually charged with. I'm thinking everything is charged under one, which is first degree murder.

The petitioner stated that counsel told him that the State "needed evidence to convict [him]," and the petitioner did not believe the evidence was present in his case.

The petitioner testified that counsel relayed to him a plea offer from the State of twenty years, and he refused the offer. He claimed that he rejected the offer because counsel told him that there "was a good chance [they] could win at trial," and the petitioner thought that the State did not have proof to convict him of first degree murder. He said that he did not understand the felony murder charge because counsel failed to tell him about it. The petitioner stated, "If I would have understood the difference between first degree murder and felony murder, I would have took the offer that they came with me at trial."

The petitioner admitted that counsel discussed with him the possible sentences he could receive and the strength of his case. He admitted that counsel also advised him that, if he lost at trial, he could be in jail until he was in his seventies.

4

The petitioner's trial counsel testified that he met with the petitioner five or six times before trial. He relayed to the petitioner a plea offer from the State for an agreed sentence of twenty-five years. He explained to the petitioner his sentencing exposure if convicted at trial. He did not recall using the specific terms "premeditated murder" or "felony murder," but he explained to the petitioner, "These are the facts. This is what it's going to take to show you guilty." Counsel did not believe that the facts against the petitioner were "very strong." Despite not thinking that the proof was very strong, counsel told the petitioner to consider the State's offer because they could not predict what the jury would do and because of the sentencing exposure he faced if convicted after a trial. Counsel told the petitioner that his opinion was that the State's proof was "weak[,] but . . . it's there." Counsel believed that he adequately advised the petitioner of the charges against him and potential punishment. Counsel recalled,

That was the context in which we always talked about the plea was the strength of the proof on the murder and we talked about felony murder. . . . I don't think I ever talked to him about first degree murder. It was always in the context of a felony murder.

After the conclusion of the hearing, the post-conviction court made oral findings, followed by a written order, denying relief. In its oral findings, the post-conviction court determined that "based upon [counsel]'s testimony, the [petitioner] was told about the fact that felony murder existed[.]" Addressing the petitioner's assertion that he would have pled guilty had he known about the felony murder charge, the court stated, "I find that [the petitioner] did, in fact, understand what he was not pleading to in this case[.]" In its written order, the court found that the felony murder rule was explained to the petitioner, the petitioner understood the nature of the charges against him, and the petitioner knowingly and voluntarily chose to go to trial.

## ANALYSIS

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's

findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either

deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

When a petitioner alleges that a plea offer was rejected due to the ineffective assistance of counsel, he or she:

has the burden to show by a reasonable probability that, but for counsel's deficient representation, (1) he or she would have accepted the plea, (2) the prosecution would not have withdrawn the offer, and (3) the trial court would have accepted the terms of the offer, such that the penalty under its terms would have been less severe than the penalty actually imposed.

Nesbit v. State, 452 S.W.3d 779, 800-01 (citing Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012)).

As noted by the petitioner in his brief, the "crux" of his petition for post-conviction relief is that he received ineffective assistance of counsel because trial counsel failed to adequately explain to him that he was charged with two types of murder: intentional and premeditated, and murder committed during the commission of a felony. He asserts that had counsel fully advised him, he would have accepted the State's plea offer rather than "go to trial based on an incomplete understanding of his case."

Trial counsel testified that he relayed the State's plea offer to the petitioner and explained the facts that would be required to establish his guilt. Although counsel did not think the proof against the petitioner was very strong, counsel informed the petitioner that "it's there." Counsel discussed the disparity between the plea offer sentence and the sentencing exposure if convicted after a trial. Counsel believed that he adequately advised the petitioner of the charges against him and potential punishment. Counsel recalled that their discussions were "always in the context of a felony murder." The post-conviction court accredited counsel's testimony and found that the felony murder rule was explained to the petitioner. The petitioner has failed to prove that counsel rendered ineffective assistance.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the denial of the petition.

_____
ALAN E. GLENN, JUDGE